UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PEOPLES BANK,

        Plaintiff,

    v.

BLUEWATER CRUISING LLC, *et al.*,

        Defendants.

Case No. C12-00939RSL

ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on "Defendants' Motion for Partial Summary Judgment" (Dkt. # 27), "Defendants' Second Motion for Partial Summary Judgment Dismissing Plaintiff's Complaint" (Dkt. # 61), "Defendants' Supplemental Motion for Partial Summary Judgment Re: Conversion" (Dkt. # 65), and "Peoples Bank's Motion for Partial Summary Judgment" (Dkt. # 73). Defendants seek summary judgment on Plaintiff's deficiency claim, and their counterclaims of conversion, breach of contract, and unjust enrichment. Plaintiff seeks summary dismissal of all eleven of Defendants' counterclaims.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the arguments of counsel, Court finds as follows:[1]

---

[1] The Court DENIES Plaintiff's motion to strike the two marine valuation surveys attached to Ms. Nettleship's declaration on the grounds that they constitute hearsay and expert opinion testimony

# II. BACKGROUND FACTS

## A. The Loan

On April 14, 2008, Defendant Bluewater Cruising, LLC ("Bluewater") obtained a loan from Plaintiff Peoples Bank (the "Bank" or "Plaintiff") in the amount of $329,300 to purchase a sailing yacht, the S/V Maamalni (the "Vessel"). Dkt. # 27-1 at 9-10. Defendant Susan Nettleship, manager of Bluewater, executed a Promissory Note ("Note") on Bluewater's behalf and granted a Preferred Ship Mortgage (the "Mortgage") to Plaintiff to secure the loan. Id. at 9-10, 16-17. To secure the payment of the Note, the Mortgage conveys to Plaintiff "the whole of the Vessel, together with all of the mast, bowsprit, boat, anchors, cables, chains, rigging, tackle, apparel, furniture, and all other necessaries thereunto appertaining and belonging." Id. at 16.[2] In the case of default, the Mortgage authorizes Plaintiff

> to take possession of said goods, chattels, and personal property at any time, wherever found, either before or after the expiration of the time aforesaid, and to sell and convey the same, or so much thereof as may be necessary to satisfy the said debt, interest and reasonable expenses, after first giving a notice of a legal number of days, to be given by publication in some newspaper published in the city where [Bluewater] resides or conducts business, and to retain the same out of proceeds of such sale; the surplus (if any) to belong and to be returned to

---

that was not disclosed pursuant to the deadlines set forth in the Court's scheduling order. Dkt. # 29 at 20-23. Because these documents could be presented in a form admissible at trial, the Court DENIES Plaintiff's motion to strike. Block v. City of L.A., 253 F.3d 410, 418-19 (9th Cir. 2001) (At summary judgment stage, "a party does not necessarily have to produce evidence in a form that would be admissible at trial."); see also Fed. R. Civ. P. 56(c)(2). Furthermore, the Court finds that Defendants timely disclosed these reports before the deadline for disclosing rebuttal expert witness opinion, see dkt. # 21; Fed. R. Civ. P. 26(a)(2)(D)(ii), and Plaintiff has not moved to strike the expert witnesses.


[2] The Note also provides that "[a]ll tackle, equipment, motors, accessories, sails (if any) and furnishings now or hereafter belonging to the described boat, include without limitation, auxiliary engines, shore dinghies, ground tackle, all safety equipment, running rigging, mooring lines, and fenders, batteries, spare parts, electronic and navigational aids (including without limitation radar systems, radios, lorans, global positioning systems, depth sounders, speed logs, anemometers, electronic[s], charts and plotters), auto pilots, televisions, stereo systems, generators, inverters, navigational charts, together with all ending and vessel logs, owner/manufacturer manuals for the hull, engine, electrical wiring and plumbing diagrams, sail plans, safety equipment manuals, yard or transportation trailers and the items more particularly described on the inventory (if applicable)." Dkt. # 27-1 at 10.

1    [Bluewater].

2    Id. at 16.

3        In addition to executing the Mortgage, Ms. Nettleship unconditionally guaranteed

4    Bluewater's obligations under the Note pursuant to a Guaranty. Id. at 12-14.  Both the Note and

5    the Guaranty provide that they "will be governed by federal law applicable to [Peoples Bank]

6    and, to the extent not preempted by federal law, the laws of the State of Washington without

7    regard to its conflicts of law provisions." Id. at 10, 13.

8    **B.  Default, Repossession and Sale of the Vessel**

9        In fall of 2011, while Ms. Nettleship and her husband, Michael Bell, were sailing around

10   the world on the Vessel, Ms. Nettleship, on behalf of Bluewater, fell behind on the loan

11   payments. Dkt. # 27-1 ¶ 8.  Ms. Nettleship had previously made late payments, but until August

12   2011, the Bank had regular contact with her regarding these late payments.  Dkt. # 31 ¶¶ 8-11.

13   Despite several attempts to reach Ms. Nettleship via e-mail and phone, Plaintiff did not hear

14   from Ms. Nettleship until January 2012, more than four months after she defaulted on the loan.

15   Id. at 17.  On January 12, 2012, Ms. Nettleship sent an e-mail to Plaintiff offering to make a

16   single monthly payment on February 1, 2012.  Id.  In response, Plaintiff informed Ms. Nettleship

17   that her offer was insufficient and she needed to pay the full amount of the default.  Id.  Ms.

18   Nettleship reassured Plaintiff that she was committed to becoming current on the loan and she

19   informed Plaintiff that the she and the Vessel were in Opua, New Zealand.  Id. at 19.  During the

20   next several months, Ms. Nettleship and her business partner, Larry Atkinson, continued to

21   reassure Plaintiff that the amount in default would be paid shortly.  Id. at 21-22.  However, as of

22   late March 2012, Ms. Nettleship had missed five payments.  Because she was more than $19,000

23   behind in payments, Plaintiff decided to foreclose on the Vessel.  Id. ¶¶ 22-24.

24       On April 16, 2012, New Zealand authorities executed a warrant of arrest on the Vessel in

25   Auckland, New Zealand.  Dkt. # 33-1 at 8-9; see also Dkt. # 27-1 ¶¶ 9-10; Dkt. # 33-1 at 8-9.

26   Plaintiff instituted an action against the Vessel and Ms. Nettleship by serving both parties the

27

28

same day. Dkt. # 33-1 at 11-14, 16-21. The day after the arrest, New Zealand authorities

removed Ms. Nettleship and Mr. Bell from the Vessel, and the Vessel remained under New

Zealand authorities' control. Dkt. # 27-1 at ¶10; <u>see</u> Dkt. # 33-1 ¶¶ 18-19. That same day, Ms.

Nettleship, represented by New Zealand counsel, began negotiating a resolution with Plaintiff,

also represented by New Zealand counsel. Dkt. # 33-1 ¶¶ 14-16.

On May 18, 2012, Ms. Nettleship's counsel sent an e-mail to Plaintiff's counsel

requesting permission for Ms. Nettleship and Mr. Bell to return to the Vessel to retrieve personal

items. Dkt. # 33-2 at 10-21. Ms. Nettleship's counsel indicated that Ms. Nettleship did not

intend to defend the action, but merely wanted to retrieve some personal property before the

expiration of their visas on May 28, 2012. <u>Id.</u> at 10. Plaintiff agreed to the removal of purely

personal items from the Vessel, but determined that all other items should remain as part of the

Vessel. <u>Id.</u> at 25-26. Plaintiff, however, conditioned this agreement on the execution of a U.S.

Bill of Sale ("Bill of Sale"). <u>Id.</u> During subsequent negotiations related to the removal of items

from the Vessel, Ms. Nettleship informed Plaintiff that she would agree to sign the Bill of Sale if

Plaintiff would agree to certain procedures for determining which items belonged to the Vessel

and would allow her and Mr. Bell to retrieve certain items from the Vessel. <u>Id.</u> at 34. On May

25, 2012, Ms. Nettleship executed a Bill of Sale on behalf of Bluewater. Dkt. # 31 at 26. After

the Bill of Sale was signed, Ms. Nettleship and Mr. Bell returned to the Vessel, gathered a few

personal items, and left New Zealand. Dkt. # 27-1 ¶ 14.

Shortly after the Bill of Sale was signed, Plaintiff hired an Auckland, New Zealand,

broker to market and sell the Vessel in New Zealand. Dkt. # 31 ¶¶ 37-38. Plaintiff did not have

any formal appraisals performed before listing the Vessel, but instead relied on the broker's

examination and valuation of the Vessel for listing purposes. Dkt. # 62 at 27-28. The broker

listed the Vessel for $269,000 N.Z. (approximately $163,000 U.S.) and received an offer for the

listing price within a week. Dkt. # 30 at 5; <u>see</u> <u>also</u> Dkt. # 31 at 30-36; Dkt. # 62 at 36; Dkt. #

79-1 at 15. Plaintiff did not provide notice by publication in a newspaper, as required by the

Mortgage. Dkt. # 62 at 67. Ms. Nettleship did not receive notice of the sale until a few days after Plaintiff accepted the offer. Dkt. # 38 ¶ 4; see also Dkt. # 37 at 4. She was not informed of the date, time, or place of sale. Dkt. # 38 ¶ 4.

In July 2012, default judgment was entered against the Vessel in the New Zealand action. Dkt. # 62 at 80. Plaintiff dismissed its claims against Ms. Nettleship. Id. Shortly thereafter, Plaintiff executed and recorded a Satisfaction of Mortgage, indicating that the Mortgage had been paid in full and consenting to the discharge of record. Dkt. # 62 at 17.

### III. DISCUSSION

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and identifying those portions of the materials in the record that show the absence of a genuine issue of fact, Fed. R. Civ. P. 56(c)(1). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

### A. Deficiency Claim

Defendants contend that Plaintiff's foreclosure of the Vessel constitutes one of the three things: 1) a foreclosure under the Ship Mortgage Act ("SMA")/Judicial Sales Act ("JSA"), 2) a strict foreclosure under Washington's Uniform Commercial Code ("UCC"), or 3) a self-help

repossession under the UCC.  Dkt. # 61 at 1-2.  Defendants argue that Plaintiff is not entitled to recover a deficiency under any of those theories because Defendants failed to comply with the strict requirements of the SMA and JSA; Defendants accepted the Vessel in full satisfaction of the debt; and Plaintiff failed to comply with the UCC provisions governing the seizure and sale of collateral.  The Court addresses each argument in turn.

### 1. Remedies under the SMA and JSA

Defendants first argue that the SMA requires a mortgagee to follow the procedures outlined in the JSA when foreclosing on a preferred ship mortgage and because Plaintiff failed to comply with these procedures, Plaintiff is precluded from seeking any deficiency.  Dkt. # 27 at 8-9 (citing 46 U.S.C. § 31325(b)(2)(A)).  The relevant provision of the SMA, however, was amended in 1996 to provide non-judicial alternatives for lenders to take possession of a vessel after default.  46 U.S.C. § 31325(b)(3) ("On default of any term of the preferred mortgage, the mortgagee may. . . enforce the preferred mortgage lien or a claim for the outstanding indebtedness secured by the mortgaged vessel, or both by exercising any other remedy (including an extrajudicial remedy) against a documented vessel. . . or a mortgagor. . . for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness, if the remedy is allowed under applicable law.").  This amendment made clear that marine lenders were not required to pursue foreclosure in court to preserve their right to recover a deficiency following the sale of the vessel.  <u>Barclays Bank PLC v. Poynter</u>, 710 F.3d 16, 20 n.4 (1st Cir. 2013).[3]  Furthermore, the SMA does not prohibit parties to a preferred ship mortgage from agreeing in contract to self-help repossession under state law.  <u>Dietrich v. Key Bank, N.A.</u>, 72 F.3d 1509, 1517 (11th Cir. 1996) (SMA does not preempt state law provisions providing self-help procedures); <u>see also</u> H.R. Rep. No. 104-854, at 137 ("Consistent with existing law, the

---

[3]  Additionally, as the legislative history makes clear, the amendment "also supports the international recognition of vessel mortgage foreclosures under principles of comity and permits a preferred mortgage on a U.S.-flag vessel to be foreclosed in a foreign court having jurisdiction over the vessel."  H.R. Rep. No. 104-854, at 136-37 (1996) (Conf. Rep.).

rights of any maritime lien claimant or holder of a preferred mortgage are expressly preserved under the amendments made by this section, notwithstanding the use of a self-help remedy under state law.").

Because the SMA expressly allows a mortgagee such as Plaintiff to pursue non-judicial self-help remedies following default on a preferred ship mortgage, whether Plaintiff complied with the JSA's procedural requirements is not dispositive.[4]

## 2. Full Satisfaction of Debt Under the UCC

Defendants also contend that Plaintiff is not entitled to seek a deficiency because it accepted the Vessel in full satisfaction of the underlying debt pursuant to the UCC. Dkt. # 61 at 12. Plaintiff responds that the UCC does not apply because the parties did not contract for it to apply and even if the UCC does apply, Plaintiff did not accept the collateral in full satisfaction of the debt as defined by the UCC. Dkt. # 78 at 7-11.

As a preliminary matter, the Court concludes that the UCC applies to the Mortgage. Although the Mortgage itself does not identify the governing law, the attached Note and related Guaranty expressly provide that they "will be governed by federal law applicable to [the Bank] and, to the extent not preempted by federal law, the laws of the State of Washington." Dkt. # 27-1 at 10, 13. Furthermore, the Mortgage incorporates the terms of the Note and the language of the Mortgage clearly anticipates both self-help repossession and private sale of the Vessel. Id. at 16 ("if default be made in such payments. . . the Mortgagee is hereby authorized to take possession of said goods, chattels, and personal property at any time, wherever found. . . and to sell and convey the same"). Beyond arguing that the UCC does not apply and recommending

_____

[4] Defendants argue in reply that Plaintiff's deficiency claim should be dismissed because it failed to comply with the UCC. Dkt. # 34 at 3-11. The Court would ordinarily strike this argument and the evidence submitted in support because it was raised for the first time after Plaintiff responded to the motion for partial summary judgment, thereby denying Plaintiff an opportunity to respond. However, because this argument was subsequently presented in Defendants' second motion for partial summary judgment and Plaintiff has had an opportunity to respond, the Court DENIES as moot Plaintiff's motion to strike Section B of Defendants' reply memoranda (Dkt. # 41).

that the Court look to the contracts between the parties, Plaintiff fails to identify any alternative law that should govern the self-help remedy at issue in this case. Dkt. # 78 at 7-8. Because the Mortgage incorporates the terms of the Note, which contains a governing law clause providing that federal law and where not preempted, Washington law, govern, and the Mortgage contemplates the use of self-help remedies in the event of default, the Court finds that Washington's UCC applies to the Mortgage. See Dietrich, 72 F.3d at 1512.

Having determined that the UCC applies, the Court turns to Defendants' argument that Plaintiff effected a strict foreclosure under the UCC. RCW 62A.9A-620 governs the procedure for accepting collateral in full or partial satisfaction of a debt. According to this section of the UCC, a secured party such as Plaintiff may only accept collateral in full or partial satisfaction of the underlying debt if (1) the debtor consents to the acceptance of collateral in full satisfaction of the obligation in a "record authenticated after default," or by failing to notify the secured party of any objections following receipt of a proposal from the secured party, and (2) the secured party consents to the acceptance "in an authenticated record" or sends a proposal to the debtor. RCW 62A.9A-620(a)-(c). All that is required for strict foreclosure to occur is that the debtor agree to the acceptance of collateral in full satisfaction of the debt in writing after default and the secured party consent to satisfaction in an authenticated record. See RCW 62A.9a-620, UCC cmt. 2, 3, 5.

Defendants argue that the requirements for effective acceptance were met in this case. First, they contend that Ms. Nettleship's signature on the Bill of Sale, which states that the "Vessel is sold free and clear of all liens, mortgages, and other encumbrances of any kind and nature," satisfies the requirement that the debtor consent to acceptance following default under RCW 62A.9A-620(c)(2). Dkt. # 61 at 14. Even though the Bill of Sale does not state that the transfer of title satisfies the debt, Ms. Nettleship believed her execution of this document relieved her of any ongoing obligation under the Preferred Mortgage. Dkt. # 64 ¶ 5. Second, Defendants argue that Plaintiff's Satisfaction of Mortgage, signed by Charles Guildner on behalf

of Plaintiff, after Plaintiff received the Bill of Sale from Ms. Nettleship establishes Plaintiff's consent to the acceptance in an authenticated record. Dkt. # 61 at 14.

Although Plaintiff argues that it did not accept the Vessel in satisfaction of the debt, it does not dispute that it recorded a Satisfaction of Mortgage in July 2012. Dkt. # 78 at 8. Notably, the Satisfaction of Mortgage provides that the "Preferred Mortgage has been paid," and it discharges the debt of record. Dkt. # 62 at 17. The Bank, however, contends that it executed and filed the Satisfaction of Mortgage by mistake, and did not intend to accept the Vessel in full satisfaction of the underlying debt, as supported by the fact that the Bank had already filed this case seeking to recover the deficiency. See Dkt. # 90 at 7-8, Dkt. # 78 at 6-7. Because neither the Bill of Sale nor the Satisfaction of Mortgage clearly states that Plaintiff accepted the Vessel in full satisfaction of the debt or that Defendants consented to acceptance, the Court finds that genuine issues of material fact exist regarding whether strict foreclosure under the UCC occurred in this case.[5]

### 3. UCC Violations

Defendants argue that even if Plaintiff did not accept the Vessel in full satisfaction of the obligation, Plaintiff is precluded from seeking a deficiency judgment because it failed to comply with the mandatory notice provisions of the UCC, dkt. # 61 at 16-18, and the sale of the Vessel was not commercially reasonable, id. at 19-23.[6] In a deficiency action, if the debtor places the secured party's compliance with the UCC in issue, the secured party has the burden of establishing that the collection, enforcement, disposition, or acceptance was conducted pursuant

---

[5] Although the Court finds that issue of fact remain for trial, the Court is clearly troubled by the Bank's characterization of its execution and recording of the Satisfaction of Mortgage as a "mistake," particularly where the Bank chose to execute and record its own Satisfaction of Mortgage, rather than the form provided by the Coast Guard to release the Mortgage. See Dkt. # 81 at 35.

[6] Defendants argue in their reply in support of their second motion for summary judgment the Bank violated RCW 62A.9A-609 by conducting a self-help repossession of the Vessel with the assistance of New Zealand government officials. Dkt. # 80 at 8-9. Because this argument was raised for the first time after Plaintiff responded to the motion, Plaintiff was deprived of its opportunity to respond. The Court has not, therefore, considered this alternative – and untimely – argument.

to the UCC.  RCW 62A.9A-626(a)(1)-(2).  If the secured party fails to meet this burden, the amount of deficiency is limited to the underlying obligation, expenses, and attorney's fees minus the greater of (1) the proceeds of the disposition of the collateral, or (2) the amount of proceeds that would have been realized had the noncomplying party complied with the pertinent provision of the UCC.  Id. 62A.9A-626(a)(3).  The latter amount is deemed to be equal to the debt, expenses and attorney's fees unless the secured party proves that it is less than that amount.  Id. 62A.9A-626(a)(4).

### a.  Notice Requirement

After default, a secured creditor that seeks to sell the collateral must send the debtor and any secondary obligor an authenticated notice of disposition of the collateral.  RCW 62A.9A-611(b)-(c).  In the case of a private sale, like the sale that took place here, the authenticated notice need only indicate that the secured party will sell the collateral sometime after a specified date.  Id. 62A.9A-613(5).

Defendants contend that Plaintiff failed to comply with the UCC's notice requirements regarding the disposition of the Vessel, and therefore, they are entitled to the rebuttable presumption that the value of the Vessel is equal to the underlying debt.  Dkt. # 61 at 15-18.  In response, Plaintiff argues that it satisfied the notice requirements for a private disposition by informing Plaintiff that it had appointed a selling agent for the Vessel and was working with a broker to market the Vessel.  Id.  This information, Plaintiff argues, implied that the sales process had begun and the Vessel would be sold in a private sale some time after the dates of those communications.  Id.

Contrary to Plaintiff's position, such vague references to preparations for sale do not satisfy the notice requirement of RCW 62A.9A-611.  Commercial Credit Corp. v. Wollgast, 11 Wn. App. 117, 122 (1974).  Plaintiff's notice that it was working with a broker to market the Vessel was insufficient to alert Ms. Nettleship to the chosen method of disposition or the date and time the disposition was to be made.  See Dkt. # 31 at 24.  Even though the notice of a

private disposition must only inform the debtor of the date after which the sale will take place, Plaintiff's communications still failed to provide any information from which Ms. Nettleship could infer the date after which the private sale was to be made. Id. At best, the Bank's communications informed Ms. Nettleship that Plaintiff was in the process of readying the Vessel for sale, not that it had already listed the Vessel. Unlike the circumstances presented in Brunswick Acceptance Co., LLC v. MEJ, LLC, 292 S.W.3d 638 (Tenn. Ct. App. 2008), on which Plaintiff relies, Ms. Nettleship received no notice of the listing price of the Vessel, or offers to purchase the Vessel. Moreover, the sale in this case took place less than two weeks after Plaintiff informed Ms. Nettleship that it was working with an agent in New Zealand to sell the boat. See Dkt. # 75-1 at 19; Dkt. # 37 at 4. This short time cannot compare to the four months the debtor in Brunswick Acceptance Co. had to seek alternative buyers for the surrendered collateral. See 292 S.W.3d at 644.

Plaintiff's alternative argument, that Ms. Nettleship waived her right to notice of the disposition by executing the Bill of Sale is similarly unpersuasive. While it is true that voluntary relinquishment of collateral may, in certain cases, operate as a waiver of notice of disposition under RCW 62A.9A-624, Wollgast, 11 Wn. App. at 123, the circumstances presented here do not support such a finding. Unlike the debtor in Wollgast, Ms. Nettleship continued to express interest in the final disposition of the Vessel even after voluntarily relinquishing possession and title of the Vessel, dkt. # 64 at 24, and there is no indication that she did not intend to find alternative buyers for the Vessel. Furthermore, the UCC makes clear that waiver of the notice provision must be made in writing after default. RCW 62A.9A-624(a). Despite Plaintiff's argument to the contrary, nothing in the Bill of Sale suggests that Ms. Nettleship waived her right to notice of the disposition of the Vessel. See Dkt. # 31 at 26-27. Based on the undisputed facts in the record, the Court finds that Defendants did not waive their right to notice of the sale of the Vessel and Plaintiff did not comply with the UCC's notice requirement.

**b. Commercially Reasonable Sale**

Defendants also claim that the sale of the Vessel was not commercially reasonable under the UCC. Dkt. # 61 at 19-23. After a default, a secured party may sell, lease, license, or otherwise dispose of the collateral, but it must do so in a commercially reasonable manner. RCW 62A.9A-610(a)-(b). "Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." Id. 62A.9A-610(b). The creditor must use its "best efforts to sell the collateral for the highest prices and to have a reasonable regard for the debtor's interests." Swanson v. May, 40 Wn. App. 148, 155 (1985) (quoting Foster v. Knutson, 84 Wn.2d 538, 549 (1974)). Here, Defendants contend that the sale was not commercially reasonable because the listed price of the Vessel was too low and the Vessel was under-marketed. Dkt. # 61 at 19.

The burden of proving commercial reasonableness is on the Bank. Security State Bank v. Burk, 100 Wn. App. 94, 101 (2000). Generally, the fact that a greater sale price could have been achieved by a disposition at a different time or in a different manner from that chosen by the secured party is not by itself sufficient to establish that the disposition was not commercially reasonable. RCW 62A.9A-610(a). However, "a low price suggests that a court should scrutinize carefully all aspects of a disposition to ensure that each aspect was commercially reasonable." Id. 62A.9A-610, UCC cmt. 2. "Commercial reasonableness of a sale depends on the procedures employed in the sale, not on the proceeds it generates." Leasing Serv. Corp. v. Diamond Timber, Inc., 559 F.Supp. 972, 979 (S.D.N.Y 1983) (applying Washington law). While RCW 62A.9A-627(b) sets forth the means for disposition that are commercially reasonable, none of the specific methods of disposition identified in that section is required for a sale to be commercially reasonable. RCW 62A.9A-627, UCC cmt. 3.

The Court finds that Plaintiff has met its burden and presented evidence sufficient to raise genuine issues of material fact regarding whether the sale was commercially reasonable. The Bank hired an experienced yacht broker to market and list the Vessel. Dkt. # 30 at 4; Dkt. #76-1

at 2.  The broker set the listing price for the Vessel based on personal inspection of the Vessel, the amount for which other similar vessels had recently sold, the economic climate in New Zealand at the time, and the Vessel's damaged hull at the time of repossession and sale.  Dkt. # 30 at 4-6; Dkt. # 76-1 at 5; Dkt. # 79-1 at 33.  Based on the record, the Court finds the existence of genuine material facts precluding summary judgment on the issue of whether the sale was commercially reasonable.

Similarly, Plaintiff has presented evidence that the broker's marketing and sales efforts were not unreasonable, particularly here, where the purchaser of the Vessel was not related to the Bank or the broker.   The broker listed the Vessel on five websites, including yacht sales websites and the broker's own website, and contacted potential buyers who had expressed interest in purchasing similar vessels in the past. Dkt. # 79-1 at 31-32.  The broker also displayed pictures of the Vessel in its showroom. Id. at 32.  While it may have been alarming to Defendants, as well as Plaintiff, that the broker received an offer for the Vessel within a week of listing it, that fact alone is insufficient to establish that the sale was not commercially reasonable.

The valuations provided by Defendants do not undermine the Court's finding.  The 2006 and 2007 valuations were completed several years and many miles before the Vessel was repossessed by the Bank. Id. at 20.  In addition, these appraisals and the February 2012 appraisal were performed to obtain insurance, not to determine the fair market value of the Vessel for sale. Id. at 18-19, 24, 27.  Similarly, the informal bank evaluations of the Vessel were based on information from 2006 and therefore, may not necessarily reflect the value of the Vessel at the time it was repossessed in 2012. Id. at 2-3, 7.  While the Court is somewhat troubled by the fact that there was no formal appraisal conducted before the sale, the Court finds that Plaintiff has produced sufficient evidence to create a genuine issue of material fact regarding whether the sale of the Vessel was commercially reasonable.

### c.  Rebuttable Presumption of Value of Collateral

Because Plaintiff failed to comply with the notice requirements of the UCC, it "faces a

rebuttable presumption that the value of the collateral is at least equal to the amount of the outstanding debt." <u>McChord Credit Union v. Parrish</u>, 61 Wn. App. 8, 14 (1991). To overcome this presumption, "the creditor must either obtain a fair and reasonable appraisal at or near the time of repossession or produce convincing evidence of the value of the collateral." <u>Id.</u> Convincing evidence of the value consists of "proof of the condition of the collateral and the usual price of items of like condition." <u>Id.</u> This evidence must "pinpoint" the value of the Vessel on the date of repossession." <u>Id.</u>

There is no dispute that the Bank did not obtain a fair and reasonable appraisal at or near the time that it repossessed the Vessel. Dkt. # 62 at 27-28. Instead, Plaintiff's sole evidence of the value of the Vessel is the sale price of the Vessel, as determined by the broker. Dkt. # 78 at 19-20. Although evidence of the broker's valuation of the Vessel and the broker's sale process are sufficient to raise a genuine issue of material fact regarding the commercial reasonableness of the sale, the sale price alone is insufficient as a matter of law to rebut the presumption following a violation of the UCC. <u>See</u> <u>McChord</u>, 61 Wn. App. at 15. "The primary focus of commercial reasonableness is not the proceeds received from the sale but rather the procedures employed for the sale." <u>Mount Vernon Dodge, Inc. v. Seattle-First Nat. Bank</u>, 18 Wn. App. 569, 585 (1977) (quotations and alterations omitted). However, when determining whether a party has rebutted the presumption that the value of the collateral is the amount of the outstanding debt, the Court's focus is on the fair and reasonable value of the collateral at the time of repossession, not on the sale process.

As explained in <u>McChord</u>, the actual sale price of the Vessel is not "convincing evidence of the [Vessel's] value because the [broker's report] does not sufficiently 'pinpoint' a [] value at the time of repossesion." <u>McChord</u>, 61 Wn. App. at 15. The broker's estimate of fair market value was determined at the time it was listed for sale, not at the time of repossession. Dkt. # 30 at 4. Furthermore, the broker's sale price was not based on any independent resources. Thus, it does not compare to the secured party's reliance on the N.A.D.A. "Blue Book" figure in

McChord. McChord, 61 Wn. App. at 15 (finding the N.A.D.A. Blue Book figure convincing evidence of a car's fair and reasonable value). Because Plaintiff has not presented any other evidence of the fair and reasonable value of the Vessel at the time it was repossessed in April 2012, the Court finds that it has failed to meet its burden to rebut the presumption that the value of the Vessel was that of the underlying debt. Plaintiff is therefore precluded from seeking a deficiency and the Court GRANTS Defendants' motion for summary judgment on Plaintiff's deficiency claim.

**B. Defendants' Counterclaims**

### 1. Violation of the SMA and JSA

As explained in greater detail above, Plaintiff was not required to comply with the strict notice, hearing, and appraisal requirements of the JSA. The 1996 amendment to the SMA made clear that in the event of a default, lenders were not required to pursue a foreclosure action in court and could take possession of a vessel instead. 46 U.S.C. § 31325(b)(3). Because the SMA allows lenders to pursue self-help remedies, see Barclays Bank PLC, 710 F.3d at 20 n.4, and this case does not involve the judicial remedy provided for by the SMA, Plaintiff was not required to comply with the notice, hearing, and appraisal requirements of the JSA. Dietrich, 72 F.3d at 1517. The Court, therefore, GRANTS Plaintiff's motion for summary judgment on Defendants' first counterclaim.

### 2. Violation of the UCC - RCW 62A.9A-610, 611, 613

The Bank seeks summary dismissal of Defendants' counterclaim alleging that the Bank failed to comply with the UCC's notice requirements before selling the Vessel in June 2012. Dkt. # 73 at 11-12. As explained above, Plaintiff did not provide sufficient notice of the sale to Ms. Nettleship. The Court, therefore, DENIES Plaintiff's motion for summary dismissal of Defendants' counterclaim.

### 3. Setoff/Recoupment based on RCW 62A.9A-610

Plaintiff requests dismissal of Defendants' counterclaim for a setoff/recoupment of the

true value of the Vessel against the deficiency and asks the Court to enter an order stating that the sale price of the Vessel is the amount of the setoff to be applied to the underlying debt. Dkt. # 73 at 12. Plaintiff first contends that Defendants are not entitled to any kind of a setoff or recoupment because the UCC does not apply. Id. Contrary to Plaintiff's contention, the UCC applies to this case and thus, Plaintiff is not entitled to summary dismissal of this counterclaim on that ground.

As explained above, genuine issues of material fact remain regarding whether the sale of the Vessel was commercially reasonable. However, because the Court finds that Plaintiff is precluded from seeking any deficiency due to its failure to provide adequate notice under the UCC, the Court GRANTS Plaintiff's motion for summary dismissal of Defendants' third counterclaim.

**4. Washington Consumer Protection Act**

Washington's Consumer Protection Act ("CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. A private cause of action exists under the CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or property. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986). Plaintiff argues that Defendants cannot establish the first or third elements of their CPA counterclaim.

The CPA does not define "unfair or deceptive." Whether an act is unfair or deceptive is determined by the courts as a question of law. Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150 (1997). Washington courts have held that a deceptive act has the capacity to deceive a substantial portion of the population (Sing v. John L. Scott, Inc., 134 Wn.2d 24, 30 (1997)) and "misleads or misrepresents something of material importance" (Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC, 134 Wn. App. 210, 226 (2006)). This element focuses on the act's capacity to deceive rather than its actual impact on the public, and is therefore

distinct from the third element of public interest impact. <u>May v. Honeywell Int'l, Inc.</u>, 331 Fed. Appx. 526, 529 (9th Cir. 2009). Defendants' CPA claim is based on the Bank's negotiations regarding settlement of the New Zealand litigation against the Vessel and Ms. Nettleship. Dkt. # 87 at 11. While Defendants argue that the Bank's negotiation of the Bill of Sale in exchange for prompt retrieval of personal property of the Vessel was "unfair or deceptive," the Court finds that this conduct is not likely to deceive a substantial portion of the population. Although stressful, the negotiations regarding the resolution of the New Zealand litigation were conducted through counsel and were not inherently, unfair or deceptive. Defendants, therefore, have not satisfied the first element of a CPA claim.

Furthermore, Defendants have not produced evidence from which a reasonable factfinder could conclude that the Bank's conduct had the potential to affect large numbers of consumers and therefore affects the public interest. <u>Stephens v. Omni Ins. Co.</u>, 138 Wn. App. 151, 178 (2007). When, such as the case is here, the complaint involves a private dispute, the Court evaluates four factors to determine whether the Bank's conduct affects the public interest. <u>Michael v. Mosquera-Lacy</u>, 165 Wn.2d 595, 605 (2009). None of the factors is dispositive and not all four must be present. The factors are: (1) whether the alleged acts were committed in the course of the Bank's business; (2) whether the Bank advertized to the public in general; (3) whether the Bank actively solicited Defendants; and (4) whether the parties have unequal bargaining positions. <u>Id.</u> Here, the Bank was undoubtedly acting within the scope of its business. The Bank offers banking and loan services to the general public and it was providing those services to Defendants when Defendants' claim arose. However, there is no evidence that the Bank advertized to the public or solicited Defendants' business in particular. Defendants were free to select any Bank or loan servicing program they desired. Considering the relevant factors, the Court finds there is no real or substantial likelihood that large numbers of consumers would be injured in the same manner alleged by Defendants due to the Bank's particular negotiating conduct in this case. Defendants have failed to raise a genuine issue of fact

regarding other similar solicitations or a pattern of unfair practices that could satisfy the public interest element of the CPA. Plaintiff's claim for summary dismissal of Defendants' CPA counterclaim is GRANTED.

### 5. Conversion of the Vessel

"[C]onversion is the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it." <u>Consulting Overseas Mgmt., Ltd. v. Shtikel</u>, 105 Wn. App. 80, 83 (2001) (internal quotation marks and citation omitted). Defendants and Plaintiff seek summary judgment on Defendants' counterclaim that Plaintiff's repossession of the Vessel constituted conversion. Dkt. # 73.

As set forth in the Mortgage, in the case of default "the [Bank] is hereby authorized to take possession of said goods, chattels, and personal property at any time, wherever found." Dkt. # 27-1 at 16. It is undisputed that Defendants defaulted on the obligations under the Note by failing to make payments. Dkt. # 74-1 at 5. Thus, pursuant to the parties' agreement, the Bank had the right to repossess the Vessel in New Zealand and this repossession does not constitute conversion. To the extent that Defendants claim that the Bank's repossession was not lawful because it did not comply with the governing law and choice of venue clauses in the Note and Guaranty, or the notice requirement in the Mortgage, the claim is duplicative of their counterclaims for breach of contract. <u>See</u> Dkt. # 87 at 13.

As for Defendants' claim that Plaintiff's sale of the Vessel constituted conversion, the Court agrees with Plaintiff that Defendants voluntarily relinquished ownership of the Vessel by executing the Bill of Sale. Although Defendants argue that Ms. Nettleship was forced to sign the Bill of Sale under duress, dkt. # 87 at 14, Defendants have not produced sufficient evidence to support this claim. To establish duress or coercion, Defendants must prove "more than reluctance to accept or financial embarrassment. The assertion of duress must be proven by evidence that the duress resulted from the other's wrongful or oppressive conduct." <u>Retail Clerks Health & Welfare Trust Gunds v. Shopland Supermarket, Inc.</u>, 96 Wn.2d 939, 944

(1982). "Generally, circumstances must demonstrate a person was deprived of his free will at the time he entered into the challenged agreement in order to sustain a claim of duress." Id. at 944-45.

Here, Ms. Nettleship was represented by counsel during negotiations regarding the Bill of Sale and as a result of these negotiations, she was able to remove personal items from the Vessel quickly. Dkt. # 75-1 at 4-10, 15-17. Having your property foreclosed upon while facing the expiration of a travel visa in a foreign country is undoubtedly stressful, but not wrongful or unlawful, particularly where the person whose property is being foreclosed upon has defaulted on a loan secured by the property. Under these circumstances, the Court cannot conclude that Ms. Nettleship was deprived of her free will when she signed the Bill of Sale. Thus, the sale of the Vessel did not constitute conversion and Plaintiff is entitled to summary judgment on this claim.[7]

### 6. Conversion of Personal Property

In Defendants' sixth counterclaim, they allege that Plaintiff's retention of personal property present on the Vessel at the time of repossession in New Zealand constitutes conversion. Dkt. # 18 ¶¶ 73-76. Defendants and Plaintiff have cross-moved for summary judgment on this counterclaim. Dkt. # 65; Dkt. # 73. The parties dispute whether the items at issue were covered by the parties' agreement regarding the loan and whether Ms. Nettleship has standing to bring this counterclaim because most of the property is Mr. Bell's separate property. Dkt. # 65 at 4-13; Dkt. # 73 at 17-22.

The Court first considers Plaintiff's argument that Ms. Nettleship lacks standing. In federal court, a plaintiff must have standing before the Court may grant any relief. City of L.A. v. Lyons, 461 U.S. 95, 101 (1983). Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560

---

[7] Because the Court's decision is not based on the interpretation or application of foreign law, the Court DENIES Defendants' motion to strike (Dkt. # 87).

(1992). The primary issue is whether "a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." Dream Palace v. Cnty. of Maricopa, 384 F.3d 990, 999 (9th Cir. 2004) (quoting Sierra Club v. Morton, 405 U.S. 727, 731 (1972)).

Standing to bring a claim before this Court consists of three elements: (1) an "injury in fact" comprised of a "concrete and particularized" invasion of a legally-protected interest; (2) a causal connection between the conduct complained of and the injury; and (3) a likelihood that the injury will be "redressed by a favorable decision." Lujan, 504 U.S. at 560-61. Defendants argue that some of the personal property at the heart of Defendants' conversion claim is Mr. Bell's separate property, and therefore, Ms. Nettleship lacks standing to pursue a claim of conversion related to that property. Even if Plaintiff is correct that some of the property is Mr. Bell's separate property, Ms. Nettleship has standing to assert the injury in fact suffered by Mr. Bell because he assigned his claims related to the property to Ms. Nettleship, dkt. # 74-2 at 89, and Plaintiff has not produced evidence that calls into doubt the validity of that assignment. Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 773 (200) ("the assignee of a claim has standing to assert the injury in fact suffered by the assignor.").

Having determined that Ms. Nettleship has standing to pursue this conversion claim, the Court turns to whether the parties intended the Mortgage to cover the property identified by Ms. Nettleship, including spare parts, tools, cooking and baking supplies, bedding, towels, navigational books and charts, maps and tour guides, cruising guides and operation manuals, and recreational equipment. Dkt. # 66 at 6-25. Under Washington law, "the intent of the parties to a particular agreement may be discovered not only from the actual language of the agreement but also from viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties." Tanner Elec. Co-op. v. Puget Sound Power & Light Co., 128 Wn.2d 656, 674 (1996).

Thus, as an initial matter, the Court has considered the language of the Note and the Mortgage to determine the intent of the parties, as both were made and executed at the same time and complement each other. See Wash. Fed. Sav. & Loan Ass'n v. Alsager, 165 Wn. App. 10, 14 (2011) (considering promissory note and deed of trust as stating terms of conditions of obligation); Kathman v. Wakeling, 69 Wn.2d 195, 200 (1966); see also Hearst Commc'ns, Inc. v. Seattle Times, Co., 154 Wn.2d 493, 503 (2005) ("surrounding circumstances and other extrinsic evidence are to be used to determine the meaning of specific words and terms used and not to show an intention independent of the instrument or to vary, contradict or modify the written word.") (internal quotation marks and citations omitted).

The primary goal of contract interpretation is "to carry out the intent of the parties as manifested, if possible, by the parties' own contract language." Dep't of Corr. v. Fluor Daniel, Inc., 160 Wn.2d 786, 795 (2007) (en banc). Washington follows the objective theory of contract, under which the court attempts to determine the parties' intent by examining the objective manifestations of the agreement, rather than focusing on the parties' unexpressed subjective intents. Hearst Commc'ns, Inc., 154 Wn.2d at 503-04. Contract interpretation is a question of law if it is unnecessary to rely on extrinsic evidence or if only one reasonable inference can be drawn from the extrinsic evidence. Tanner, 128 Wn.2d at 674. When the parties' intentions must be determined from extrinsic evidence, however, it is the trier of fact's role to evaluate the credibility of the evidence and choose among varying inferences that can be drawn from the evidence. Berg v. Hudesman, 115 Wn.2d 657, 668 (1990).

The heart of the parties' dispute is whether they intended "the whole of the Vessel, together with all of the mast, bowsprit, boat, anchors, cables, chains, rigging, tackle, apparel, furniture, and all other necessaries thereunto appertaining and belonging," to include the property described above. Dkt. # 73 at 17-21; Dkt. #65 at 5-8. In arguing that the parties did not intend the Mortgage to cover these items, Plaintiff relies on her deposition testimony and the testimony of Charles Guildner, an Executive Vice President and Chief Credit Officer for the

Bank. Dkt. # 65 at 7. The Bank also relies on extrinsic evidence to support its position that the parties intended the Mortgage to cover a broad array of property that may be on the Vessel. Dkt. # 73 at 19.

Because there is more than one reasonable inference that can be drawn from the evidence submitted, the Court finds that questions of material fact exist regarding whether the parties intended the Mortgage to cover the property that is the subject of this conversion counterclaim. Thus, the Court cannot determine whether the Bank unlawfully interfered with the property. The parties' cross-motions for summary judgment on Defendants' sixth counterclaim is DENIED.

### 7. Breach of Contract (the Note)

The parties have cross-moved for summary judgment on Defendants' seventh counterclaim, breach of the promissory note. Dkt. # 27 at 19-20; Dkt. # 73 at 22. To succeed on a breach of contract claim, a part must show that a contract created a duty, the duty was breached, and the breach proximately caused damage to the party. <u>Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.</u>, 78 Wn. App. 707, 712 (1995).

Defendants contend that Plaintiff breached the Note by failing to provide notice of the default and an opportunity to cure. Dkt. # 18 ¶¶ 77-80. In response to Plaintiff's motion for partial summary judgment, however, Defendants admit that the terms of the Note do not require Plaintiff to provide notice and an opportunity to cure in the case of a default in payment, dkt. # 87 at 18, and thus, the Court DENIES Defendants' motion for summary judgment and GRANTS Plaintiff's motion for summary judgment on this claim.

### 8. Breach of Contract (the Mortgage)

It is undisputed that in the case of default, before Plaintiff could sell or convey the Vessel, the Mortgage required Plaintiff to provide "a notice of a legal number of days. . . by publication in some newspaper published in the city where Mortgagor resides or conducts business." Dkt. # 27 at 19; Dkt. # 29 at 16. Plaintiff does not dispute that it did not publish a notice of sale in a newspaper in Seattle before selling the Vessel in New Zealand. Dkt. # 29 at 16; Dkt. # 73 at 22-

24.

Defendants therefore, have established a breach of contract with regards to the notice requirement in the Mortgage. In order to recover on a breach of contract claim, however, Defendants bear the burden of proving that they "incurred actual economic damages as a result of the breach." Columbia Park Golf Course, Inc. v. City of Kennewick, 160 Wn. App. 66, 83 (2011). "Evidence of damage is sufficient if it affords a reasonable basis for estimating the loss and does not subject the trier of fact to mere speculation or conjecture." Shinn v. Thrust IV, Inc., 56 Wn. App. 827, 840 (1990).

To show damage, Defendants argue that if they had received notice of the sale of the Vessel, they would have been able to secure another buyer who would have paid more than the amount actually received on the sale of the Vessel. Dkt. # 87 at 18-21. They rely on evidence that Ms. Nettleship and Mr. Bell were aware of people who had, at one time, expressed interest in purchasing the Vessel or a yacht similar to it. Id.[8] This evidence, however, is too speculative to show the existence of damages. Furthermore, Defendants have not shown that it was the lack of notice in a newspaper in Seattle that prohibited them from securing a buyer who would have paid more for the Vessel. At best, the evidence presented suggests that Mr. Bell was aware of other people who, at one time or another, expressed interest in owning the Vessel. Because Defendants have failed to produce any evidence of economic injury associated with this breach, Plaintiff is entitled to summary judgment on this counterclaim and Defendants' motion for summary judgment is DENIED.

**9. Breach of Contract (the Note and Guaranty)**

Both parties seek summary judgment on Defendants' counterclaim that Plaintiff breached

---

[8] Plaintiff moves to strike Mr. Bell's deposition testimony regarding statements by other people that they were interested in purchasing the Vessel because it is hearsay. Dkt. # 89 at 13. The Court agrees with Plaintiff and has not considered the statements for the truth of the matter asserted. The Court DENIES "Defendants' Motion for As-needed Briefing in Response to Plaintiff's Motion to Strike" (Dkt. # 91).

the terms of the Note and Guaranty by repossessing the Vessel in New Zealand pursuant to New Zealand laws. Dkt. # 27 at 19-20; Dkt. # 73 at 24. Although Defendants' counterclaim identifies the governing law provisions of the Note and Guaranty, dkt. # 18 ¶¶ 85-89, Defendants also argue in response to Plaintiff's motion for partial summary judgment that this counterclaim is based on the language in the "Choice of Venue" clause in the Note and Guaranty, which provides that "[i]f there is a lawsuit, [Bluewater and Ms. Nettleship] agree[] upon Lender's request to submit to the jurisdiction of the courts of King County, State of Washington." Dkt. # 27-1 at 10 (Note), 13 (Guaranty).

First, to the extent that Defendants rely on the governing law provisions of the Note and Guaranty, Plaintiff is entitled to summary judgment because these provisions do not impose any duties on Plaintiff or confer any rights on Defendants. <u>Nw. Indep. Forest Mfrs.</u>, 78 Wn. App. at 712 (setting forth elements of breach of contract claim). Second, to the extent that Defendants rely on the choice of venue clause, the Court finds that this clause is not a mandatory forum selection clause. Rather, the language in this clause merely provides consent to jurisdiction in Washington courts should litigation occur. <u>Chew v. Lord</u>, 143 Wn. App. 807, 817-18 (distinguishing between forum selection clause and consent to personal jurisdiction). "Consenting to personal jurisdiction in Washington courts is not the same as agreeing that Washington courts are the only venue in which a claim may be brought." <u>Id.</u> at 818. The language in the Note and Guaranty merely indicate that if suit is filed, Ms. Nettleship and Bluewater consent to personal jurisdiction in Washington, upon Plaintiff's request. Dkt. # 27-1 at 10, 13. These provisions do not provide that Washington courts are the only forum in which an action could be brought. The Court, therefore, DENIES Defendants' motion for summary judgment on this claim and GRANTS Plaintiff's motion for summary dismissal.

### 10. Unjust Enrichment/Quasi-Contract

In their tenth counterclaim, Defendants seek relief based on a theory of unjust enrichment/quasi-contract. Dkt. # 18 ¶¶ 90-95. Under Washington law, however, "a plaintiff

who is a party to a 'valid express contract is bound by the provisions of that contract' and may not bring a claim for unjust enrichment for issues arising under the contract's subject matter." <u>Minnick v. Clearwire US, LLC</u>, 683 F.Supp.2d 1179, 1186 (W.D. Wash. 2010) (quoting <u>Chandler v. Wash. Toll Bridge Auth.</u>, 17 Wn.2d 591, 604 (1943)); <u>see</u> <u>also</u> <u>Westcott v. Wells Fargo Bank, N.A.</u>, 862 F.Supp.2d 1111, 1116 (W.D. Wash. 2012) ("a party cannot bring an action for implied contract or quasi-contract where a valid written agreement covers the parties' dispute."). Because it is undisputed that Defendants are parties to an agreement governing the subject matter of this dispute, dkt. # 73 at 25; dkt. # 87 at 22, the Court DENIES Defendants' motion for summary judgment on this claim and GRANTS Plaintiff's motion for summary judgment.

**11. Breach of Implied Duty of Good Faith and Fair Dealing**

Finally, Plaintiff seeks summary dismissal of Defendants' eleventh counterclaim in which they allege that Plaintiff breached its duty of good faith and fair dealing. Dkt. # 73 at 25. "There is in every contract an implied duty of good faith and fair dealing. . . that obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." <u>Badgett v. Sec. State Bank</u>, 116 Wn.2d 563, 569 (1991). This duty, however, does not "inject substantive terms into the parties' contract," but rather, "requires only that the parties perform in good faith the obligations imposed by their agreement." <u>Id.</u> (quotation marks and citation omitted). Accordingly, the duty is not "free-floating," but "exists only in relation to performance of a specific contract term." <u>Id.</u> at 570.

Defendants claim that Plaintiff's duty of good faith and fair dealing obligated it to comply with the governing law provisions of the Note and Guaranty, to provide notice of the sale pursuant to the terms in the Mortgage, and to conduct a sale of the Vessel in a manner that would return a surplus to Defendants. Dkt. # 18 ¶ 98-100. To the extent that Defendants' counterclaim is based on the governing law provisions of the Note and the Guaranty, as explained above, these provisions do not impose any obligations on Plaintiff and therefore, Defendants' claim on this

basis fails as a matter of law. <u>Johnson v. Yousoofian</u>, 84 Wn. App. 755, 762 (1996) ("If there is no contractual duty, there is nothing that must be performed in good faith."). Plaintiff also has not identified any provision in the Note, Mortgage, or Guaranty that obligates the Plaintiff, following default, to dispose of the Vessel in a manner that would return a surplus to Defendants. The Mortgage provides that if, and only if the disposition of the Vessel results in a surplus, that surplus must be returned to Bluewater. Dkt. # 27-1 at 16. Because Defendants have not identified any contract provision requiring Plaintiff to dispose of the Vessel in a manner that would return a surplus, Plaintiff's counterclaim based on Defendants' alleged failure to pursue a sale that would return a surplus cannot survive summary judgment. <u>See</u> <u>Badgett</u>, 116 Wn.2d at 570.

As for Plaintiff's failure to provide notice pursuant to the terms of the Mortgage, the Court finds that Defendants have not produced any evidence to create a genuine issue of material fact to overcome summary judgment. While there is no dispute that Plaintiff did not provide the requisite notice, there is nothing in the record that suggests that Defendants' failure occurred in bad faith, particularly in light of Defendants' receipt of the executed Bill of Sale from Ms. Nettleship. In the absence of any genuine issue of material fact, Plaintiff is entitled to summary dismissal of Defendants' counterclaim for breach of the duty of good faith and fair dealing.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the parties' cross-motions for summary judgment (Dkt. # 27, 61, 65, 73). Defendants' motions for partial summary judgment are GRANTED with respect to Plaintiff's deficiency claim and DENIED with respect to Defendants' counterclaims 5 and 7-10. Plaintiff's motion for partial summary judgment is GRANTED with respect to Defendants' counterclaims 1-5 and 7-11. The parties' cross-motions for summary judgment on Defendants' sixth counterclaim is DENIED. Defendants' "Motion for As-needed Briefing in Response to Plaintiff's Motion to Strike" (Dkt. # 91) is DENIED. Defendants' sixth counterclaim for conversion of property on board the Vessel

remains for trial.

DATED this 17th day of January, 2014.


_MMS Lasnik_
Robert S. Lasnik
United States District Judge